IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CYANDIA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  2:24-cv-00096-JRG |
| | ) | |
| v. | ) | |
| | ) | |
| SAP AMERICA, INC. and SAP SE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**PLAINTIFF CYANDIA, INC.'S
OPPOSITIONS TO SAP'S MOTIONS *IN LIMINE* NOS. 1-5**

████████████████████████████

# TABLE OF CONTENTS

**Page**

I.    CYANDIA'S OPPOSITION TO SAP'S MOTION *IN LIMINE* NO. 1............................. 1

II.    CYANDIA'S OPPOSITION TO SAP'S MOTION *IN LIMINE* NO. 2............................. 4

III.    CYANDIA'S OPPOSITION TO SAP'S MOTION *IN LIMINE* NO. 3............................. 6

IV.    CYANDIA'S OPPOSITION TO SAP'S MOTION *IN LIMINE* NO. 4........................... 10

V.    CYANDIA'S OPPOSITION TO SAP'S MOTION *IN LIMINE* NO. 5........................... 13

## TABLE OF AUTHORITIES

**Page**

**Cases**

*ABS Glob., Inc. v. Inguran, LLC*,
No. 14-cv-503-WMC, 2019 WL 3984373 (W.D. Wis. Aug. 23, 2019) ...................................13

*Alacritech Inc. v. CenturyLink, Inc.*,
No. 2:16-cv-00693-RWS-RSP, 2023 WL 6798974 (E.D. Tex. Oct. 1, 2023) .........................2

*AVM Techs., LLC v. Intel Corp.*,
927 F. Supp. 2d 139 (D. Del. 2013)......................................................................................12

*In re Baxter Travenol Labs.*,
952 F.2d 388 (Fed. Cir. 1991)................................................................................................9

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
No. CV 09-290, 2012 WL 12894848 (W.D. Pa. Nov. 5, 2012) ..............................................7

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
No. CV 09-290, 2013 WL 1767970 (W.D. Pa. Apr. 24, 2013)...............................................11

*Content Guard Holdings, Inc. v. Amazon.com, Inc.*,
No. 2:13-cv-1112-JRG, 2015 WL 11089749 (E.D. Tex. Aug. 6, 2015) ..................................9

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)................................................................................................................5

*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*,
No. 2:15-cv-1202-WCB, 2017 WL 1050120 (E.D. Tex. Mar. 17, 2017)................................6

*Image Processing Techs., LLC v. Samsung Elecs. Co.*,
No. 2:20-cv-00050-JRG-RSP, Dkt. No. 171 (E.D. Tex. June 8, 2020)..................................14

*Image Processing Techs., LLC v. Samsung Elecs. Co.*,
No. 2:20-cv-00050-JRG-RSP, Dkt. No. 88 (E.D. Tex. Apr. 15, 2020)..................................14

*JAB Distribs., LLC v. London Luxury, LLC*,
No. 09-cv-5831, 2010 WL 4008193 (N.D. Ill. Oct. 13, 2010) ...............................................9

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
694 F.3d 51 (Fed. Cir. 2012)..................................................................................................8

*Lightning Lube, Inc. v. Witco Corp.*,
4 F.3d 1153 (3d Cir. 1993).....................................................................................................12

i

*Melchior v. Hilite Int'l, Inc.*,
    665 F. App'x 894 (Fed. Cir. 2016) ................................................................6

*Miss. Chem. Corp. v. Dresser-Rand Co.*,
    287 F.3d 359 (5th Cir. 2002) ....................................................................12

*Network Sys. Techs., LLC v. Qualcomm Inc.*,
    No. 1:22-cv-01331, 2023 WL 11833572 (E.D. Tex. July 21, 2023)....................2

*Sealant Sys. Int'l, Inc. v. TEK Glob.*,
    No. C 11-00774 PSG, 2012 WL 13662 (N.D. Cal. Jan. 4, 2012)........................1

*Seitz v. Envirotech Sys. Worldwide Inc.*,
    No. CV H-02-4782, 2008 WL 656513 (S.D. Tex. Mar. 6, 2008).......................12

*SimpleAir, Inc. v. Google Inc.*,
    No. 2:14-cv-11, 2015 WL 5895401 (E.D. Tex. Oct. 6, 2015) (Gilstrap, J.)..........8, 9

*State Contracting & Eng'g Corp. v. Condotte Am., Inc.*,
    346 F.3d 1057 (Fed. Cir. 2003)..................................................................9

*State Indus., Inc. v. A.O. Smith Corp.*,
    751 F.2d 1226 (Fed. Cir. 1985)..................................................................2

*Titanide Ventures, LLC v. Int'l Bus. Machs. Corp.*,
    No. No. 4:12-cv-196, 2012 WL 5507327 (E.D. Tex. Oct. 18, 2012) ..................1

*TQ Delta, LLC v. 2Wire, Inc.*,
    486 F. Supp. 3d 803 (D. Del. 2020)............................................................3

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011)..................................................................8

*United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*,
    No. 2:18-cv-00366-JRG-RSP, 2019 WL 6896674 (E.D. Tex. Dec. 18, 2019) .......14

*Verdegaal Bros. v. Union Oil Co. of Cal.*,
    814 F.2d 628 (Fed. Cir. 1987)....................................................................6

*Zenith Labs., Inc. v. Bristol-Myers Squibb Co.*,
    19 F.3d 1418 (Fed. Cir. 1994)...................................................................14

**Other Authorities**

Fed. R. Evid. 701 .......................................................................................11, 12

Fed. R. Evid. 402 ...........................................................................................3

Fed. R. Evid. 403 ...........................................................................................3

ii

████████████████████████████

Fed. R. Evid. 702 ................................................................................................................3, 11

Fed. R. Evid. 702 ................................................................................................................3, 11

I.      **CYANDIA'S OPPOSITION TO SAP'S MOTION *IN LIMINE* NO. 1**

SAP's MIL No. 1 seeking to prevent the jury from learning that SAP was made aware of Cyandia's patent application to one of the Asserted Patents the same year it began developing the Accused Products should be denied because it is relevant to Cyandia's willfulness allegations and SAP has not demonstrated prejudice.  During prosecution of SAP's now-abandoned U.S. Patent Application No. 12/898,735 (the "Steinhauer Application"), the patent examiner rejected SAP's application in view of Cyandia's published U.S. Patent Application No. 2011/0258573 (the "573 Patent Publication") that ultimately issued as the Asserted '641 Patent.  Dkt. No. 185-1 (rejection in view of '641 publication) at CYAN 021364-21379.  The named inventor, Sebastian Steinhauer, worked on developing the accused Fiori technology.  Ex. 22[1] (SAP application listing Steinhauer as inventor), CYAN 021566-80 at 21566; *see also* Dkt. No. 145-3, Ex. 43 (Steinhauer Dep. Tr.) at 8:9-9:1, 15:18-25, 42:19-43:24.  These facts are relevant to the jury's analysis of SAP's willful infringement because they provide circumstantial evidence that SAP knew of Cyandia's patented technology as it was developing the Accused Products, even before Cyandia's CEO reached out to SAP in 2015.

Courts have repeatedly recognized that awareness of a published patent application can be probative of knowledge of an Asserted Patent and its family members.  *See Titanide Ventures, LLC v. Int'l Bus. Machs. Corp.*, No. No. 4:12-cv-196, 2012 WL 5507327, at *3 (E.D. Tex. Oct. 18, 2012) (citation by the PTO to asserted patent during prosecution of defendant's patent "sufficient to show knowledge at the pleading stage"); *Sealant Sys. Int'l, Inc. v. TEK Glob.*, No. C 11-00774 PSG, 2012 WL 13662, at *3 (N.D. Cal. Jan. 4, 2012) (rejecting argument that PTO

---

[1] Exhibits ("Ex.") referenced herein are attached to the concurrently filed Declaration of Christina M. Finn ("Finn Opp. Decl.") unless otherwise noted.

1

**R**

citation to asserted patent during prosecution of defendant's patent was legally insufficient to allege willfulness, holding that "only notice of a patent need be alleged," and that such notice may come from the PTO "in the course of prosecuting a separate patent"); *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-cv-00693-RWS-RSP, 2023 WL 6798974, at *4 (E.D. Tex. Oct. 1, 2023) (knowledge of a patent in the same family supports knowledge of the asserted patent). Further, SAP's reliance on *State Industries* (and *Network System Technologies* quotation of it) is inapposite because it does not relate to knowledge of a published patent application. *See* Mot. at 2-3; *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226 (Fed. Cir. 1985). Instead, *State Industries* involved only a "patent pending" notice, which unlike the published application here, "gives one no knowledge whatsoever" and is "not even a guarantee that an application has been filed," let alone reveal its contents. 751 F.2d at 1236.

SAP's complaints of prejudice and confusion are unfounded. First, the existence of a rejection of the Steinhauer Application based on the '641 Patent's published application has always been available to SAP because it is SAP's patent application. However, SAP never disclosed or produced any information about it during discovery. Nor did SAP ever serve any discovery requests squarely seeking the full basis of Cyandia's willfulness allegations. Despite SAP's failure to produce the Steinhauer Application or ask Cyandia about its willfulness claim, Cyandia identified it in response to SAP's interrogatory asking Cyandia to provide certain explanations *if* Cyandia "contend[s] SAP's alleged infringement was willful based on its refusal of Cyandia's 2015 Offer." Ex. 23 (Cyandia's May 5, 2025 Objs. & Resps. to SAP's Second Set of Interrogatories) at 41-43. Cyandia identified the Steinhauer Application at the first point it was responsive to SAP's discovery requests after Cyandia discovered it. That **SAP** waited until the last possible day to serve this interrogatory or withheld this information from discovery is not

2

the fault of Cyandia and why Cyandia's interrogatory response was served on the last day of discovery. Thus, SAP's complaints about the timing of Cyandia's interrogatory response are of SAP's own making, as SAP did not seek this discovery earlier in the case and SAP withheld such information during discovery. Under these circumstances, SAP cannot claim prejudice, or any claim of unfair surprise or confusion under Rule 403 fails.

Finally, there is no risk of confusion between the Steinhauer Application and the Accused Products. *See* Mot. at 4-5. Dr. Medvidović's summary of the Steinhauer Application and Cyandia's willfulness allegations are directed to the fact that SAP ***knew*** of Cyandia's Asserted Patents for willfulness purposes, not whether SAP needed to practice what was disclosed in the Steinhauer Application. *See* Dkt. No. 143 at 4; Dkt. No. 172 at 2. Thus, SAP's argument amounts to nothing more than a mischaracterization of Dr. Medvidović's report to manufacture allegations where none exists. Further, *TQ Delta* does not require exclusion. *See* Mot. at 6. There, the court excluded lengthy testimony about the history of various amendments ***to the asserted patent*** because it risked confusing the issues and had little probative value. *TQ Delta, LLC v. 2Wire, Inc.*, 486 F. Supp. 3d 803, 811 (D. Del. 2020). Here, such testimony is not at issue. Rather, Dr. Medvidović's testimony regarding Cyandia's patent application appearing during the prosecution of the Steinhauer Application is to show how SAP learned of the '641 Patent's published application and there is no risk of confusion as to the meaning of the Asserted Patents, as was present in *TQ Delta*.

As demonstrated above, the Steinhauer Application is relevant to SAP's knowledge of the Asserted '641 Patent and Cyandia's willfulness allegations, and is accordingly admissible under FRE 402, 403 and 702 such that SAP's MIL No. 1 should be denied.

3

## II.    CYANDIA'S OPPOSITION TO SAP'S MOTION *IN LIMINE* NO. 2

SAP's MIL No. 2 seeks to exclude Cyandia's validity expert, Dr. Goodrich, from providing rebuttal expert testimony in response to Dr. Clark's testimony and Cyandia's counsel from cross-examining and challenging Dr. Clark's faulty opinions.  Contrary to SAP's MIL No. 2,[2] Dr. Goodrich has not read a mobile device requirement into the claims, but rather his opinions regarding mobile devices directly respond to those of SAP's expert, Dr. Clark, as to mobile devices.  Specifically, Dr. Goodrich's testimony rebuts SAP's assertions about how SAP EP 6.0 and IBM WebSphere with WEA operated with respect to ***Dr. Clark's mapping of mobile devices*** as meeting the claimed "platform" element.  *See, e.g.*, Dkt. No. 185-10 (Goodrich Rebuttal Rpt.) ¶¶ 272-275, 299, 308, 324, 659-660, 666-667, 693, 700, 710, 835, 847, 853, 917, 928, 1013 (providing rebuttal evidence as to Dr. Clark's mapping of the alleged prior art to mobile devices and explaining why Dr. Clark's analysis is incorrect); *see also* Dkt. No. 139-2 (Clark Invalidity Rpt.) ¶¶ 270-272, 305 (Dr. Clark mapping claimed "platform" element to SAP EP 6.0 ***running on mobile devices***), 245-247 (explaining that IBM WebSphere with WEA ***runs on mobile devices***); Dkt. No. 139-4 (Clark Invalidity A-2 Chart) at 3, 9 (same).  One of SAP's elected prior art systems is IBM WebSphere with WEA, which requires a mobile device.

Each paragraph SAP seeks to exclude is proper rebuttal evidence that addresses flaws in Dr. Clark's analysis.  Mot. at 7 (citing paragraphs of Dr. Goodrich's report addressing SAP EP 6.0 and IBM WebSphere with WEA).  In particular, Dr. Goodrich specifically cites to the underlying evidence and the testimony of SAP engineers, who contradict Dr. Clark's assertion

---

[2] SAP includes a number of purported quotations about the alleged prior art being patentably distinct from the claims based on mobile devices in its Motion without citations.  Mot. at 6.  It is unclear what SAP is quoting to because none of the quotations appear in Dr. Goodrich's report. *Id.*

4

that SAP EP 6.0 operated on mobile phones.  Dkt. No. 185-10 (Goodrich Rebuttal Rpt.) ¶¶ 272-274.  This evidence shows that Dr. Clark is incorrect about how SAP EP 6.0 operated and refutes his analysis for why the platform elements of the claims are met.  Further, Paragraphs 299, 308, and 324 of Dr. Goodrich's report rebuts Dr. Clark by showing that he failed to show SAP EP 6.0 runs on mobile devices.  *Id.* ¶¶ 299, 308, 324.  Furthermore, Dr. Clark relies on SAP EP 6.0's alleged ability to work on mobile devices as a motivation to combine it with IBM WebSphere with WEA.  *See, e.g.*, Dkt. No. 139-2 (Clark Invalidity Rpt.) ¶¶ 249-250, 327.  Dr. Goodrich, in turn, properly rebuts these opinions by evaluating the underlying evidence.

With respect to IBM WebSphere with WEA, Dr. Goodrich disagrees with Dr. Clark on the operation of IBM WebSphere with WEA, noting that the alleged prior art system taught away from the claims because it requires converting data to plain text on a mobile device.  *See, e.g.*, Dkt. No. 185-10 (Goodrich Rebuttal Rpt.) ¶¶ 660, 666 (showing the output of WEA on a mobile device); *see also id.* ¶¶ 275, 659, 667, 693, 700, 710, 835, 847, 853, 917, 928, and 1013 (disagreeing with Dr. Clark's analysis).  Again Dr. Goodrich's testimony is proper rebuttal to arguments Dr. Clark raised.

In addition to Dr. Goodrich's rebuttal testimony, Cyandia must also be allowed to cross-examine Dr. Clark regarding his unreliable opinions on SAP's alleged prior art systems and their purported mobile device capabilities.  SAP's MIL seeks to preclude Cyandia from challenging Dr. Clark's credibility and opinions as to an issue that SAP affirmatively raised, which is not grounds for exclusion.  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993) ("[v]igorous cross-examination [and] presentation of contrary evidence" are the "traditional and appropriate means of attacking shaky but admissible evidence," such as Dr. Clark's opinions).

The cases SAP cites do not support exclusion. Both *Melchior* and *Verdegaal* address whether a construction (or lack thereof) supported a jury's finding of validity. *Melchior v. Hilite Int'l, Inc.*, 665 F. App'x 894, 899-900 (Fed. Cir. 2016); *Verdegaal Bros. v. Union Oil Co. of Cal.*, 814 F.2d 628, 632 (Fed. Cir. 1987). Here, the dispute does not relate to claim construction, but rather, how the alleged prior art systems operate. Because Dr. Goodrich challenges Dr. Clark's analysis of the underlying evidence, including with the testimony of SAP's own engineers, Cyandia should not be precluded from referring to mobile phones and seeking to cross examine Dr. Clark's opinions or presenting rebuttal expert testimony.

## III.   CYANDIA'S OPPOSITION TO SAP'S MOTION *IN LIMINE* NO. 3

SAP's revenues and profits for the Accused Products are relevant to the hypothetical negotiation analysis in this case. Cyandia's damages expert, Mr. Blok, considers this evidence within the framework of his *Georgia-Pacific* analysis, specifically Factors 8, 11, 13, and 15. *See, e.g.*, Ex. 24 (Blok Rpt.) ¶¶ 123-134, 150-151, 179-217.

*Georgia-Pacific* factors 8 and 11 specifically address the profitability, commercial success, and value of the Asserted Patents to the infringer. *Id.* ¶¶ 123-127. Thus, Mr. Blok analyzed SAP's revenues and profits from the Accused Products, including utilizing SAP's gross profit margin calculated from SAP's revenues and profits for SAP's Cloud and Software divisions as a proxy for the Accused Products as the first step in the calculation of his royalty rate. *Id.* ¶¶ 131, 150-151, 198-199, 215-217. That calculation is "a step that [i]s necessary to calculate the reasonable royalty damages (equal [in necessity as the step applying] infringing sales multiplied by the reasonable royalty rate)." *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2:15-cv-1202-WCB, 2017 WL 1050120, at *9-11 (E.D. Tex. Mar. 17, 2017) (denying defendant's motion to exclude sales and profitability of the accused products because

6

F███████████████████████████████████████████████████

the "initial number was an essential part of [the damages] model for calculating damages" and is a legitimate and relevant part of damages). Indeed, "some reference to revenues, margins, and values is necessary to explain and formulate a reasonable royalty" and "are necessary for [damages experts] to testify coherently on the issue of damages." *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, No. CV 09-290, 2012 WL 12894848, at *4 (W.D. Pa. Nov. 5, 2012) (denying motion *in limine* to exclude reference to the overall price, profit or margin of the accused product). Thus, SAP's revenues and profits are highly relevant to Mr. Blok's reasonable royalty calculation and exclusion would be unduly prejudicial to Cyandia.

Additionally, Cyandia's use of SAP's revenue spreadsheet is relevant and necessary to counter and challenge SAP's attacks on Mr. Blok's methodology. For example, SAP's expert, Ms. Salters, criticizes Mr. Blok's royalty base and royalty rate as "overstated" due to usage statistics that she claims shows low Fiori adoption. Dkt. No. 127-2 (Salters Rebuttal Rpt.) ¶¶ 112-116, 125-128. Cyandia should be permitted to cross-examine Ms. Salters with SAP's revenues generated from sales of ***all*** Accused Products. S/4HANA is the only Accused Product for which SAP produced usage statistics related to Fiori before Mr. Blok served his expert report. Dkt. No. 113 (Joint Status Rpt. re Motion to Compel) at 7-8. And SAP withheld licensed user and usage information for the other Accused Products on the revenue spreadsheet during discovery such that Mr. Blok was not able to consider them in his analysis.[3] Dkt. No. 191 (Order on Cyandia's Motion to Compel) at 5-6. Further, Cyandia should be permitted to present through Mr. Blok SAP's revenues that undermine SAP's criticisms of him, especially given the

---

[3] As of the filing of this opposition, Cyandia is still waiting for SAP to produce such relevant information. The Order on Cyandia's Motion to Compel financial data issued after Mr. Blok's report was served.

7

prejudice Cyandia has already experienced due to SAP's withholding of financial information during discovery.  *See id*.

SAP, on the other hand, fails to identify any actual prejudice it would suffer if testimony regarding revenues and profits for the Accused Products is allowed.  SAP's prime concern appears to be that it does not want the jury to know of the substantial revenues and profitability it enjoys from sales of the Accused Products, yet this is probative evidence of damages that far outweighs SAP's claims of prejudice, and SAP does not have any legal authority to support its arguments.  For example, in *Uniloc USA, Inc. v. Microsoft Corp.*, the damages expert compared his royalty figure against "Microsoft's approximate total revenue for Office and Windows" as a "check" to determine whether his figure was reasonable.  632 F.3d 1292, 1318 (Fed. Cir. 2011). Here, Mr. Blok does not use revenues and profits for the Accused Products as a reasonableness check and does not "impl[y] a relationship between the entire market value of the accused products and the patent" by comparing the Accused Products' revenues to SAP's lump sum damages theory, as the plaintiff in *Uniloc* did.  *Id.* at 1320.

*LaserDynamics* is inapposite because it addresses the entire market value rule, which Mr. Blok undisputedly does not use.  *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 68-69 (Fed. Cir. 2012).  Further, while the *SimpleAir* court granted-in-part defendant's request to exclude "overall product revenue" from reaching the jury, there is no indication that the expert in that case utilized the product revenue in his reasonable royalty analysis, or that overall product revenue was required to rebut improper attacks on the plaintiff's expert's methodology, as is the case here.  *SimpleAir, Inc. v. Google Inc.*, No. 2:14-cv-11, 2015 WL 5895401, at *3-4 (E.D. Tex. Oct. 6, 2015) (Gilstrap, J.).  Additionally, Mr. Blok's methodology does not invoke the entire market value rule because he did an apportionment by "isolat[ing] the value of the patented

8

feature," subtracting costs, and using *Georgia-Pacific* "to estimate how the [p]laintiff and [d]efendants would split any such incremental profit at the hypothetical negotiation table." *Id.* at *3.

Additionally, in *Content Guard*, the damages expert used the revenues of "multi-component product[s]" as the royalty base, which the court cautioned could place undue emphasis on the value of the entire product. *Content Guard Holdings, Inc. v. Amazon.com, Inc.*, No. 2:13-cv-1112-JRG, 2015 WL 11089749, at *5 (E.D. Tex. Aug. 6, 2015). Here, Mr. Blok does not use the revenues of the Accused Products as his royalty base. Thus, there is no risk of misleading the jury by placing undue emphasis as in *Content Guard*.

Finally, SAP's reliance on *In re Baxter Travenol Labs.* with respect to commercial success is also misplaced because Mr. Blok is not a validity expert evaluating commercial success to support objective indicia of nonobviousness. 952 F.2d 388, 392 (Fed. Cir. 1991). The Asserted Patents are assumed to be valid (and thus a nexus exists) in the hypothetical negotiation. Thus, the revenues and profitability of the Accused Products are relevant to Mr. Blok's analysis of commercial success in the context of *Georgia-Pacific*. *See JAB Distribs., LLC v. London Luxury, LLC*, No. 09-cv-5831, 2010 WL 4008193, at *4 (N.D. Ill. Oct. 13, 2010) ("[T]he profitability of an infringing product is axiomatically relevant to the hypothetically negotiated license for the *patented* product[.]") (internal quotations and citation omitted); *see also State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1072 (Fed. Cir. 2003) ("[A]n actual infringer's profit margin can be relevant to the determination of a [reasonable] royalty rate in a hypothetical negotiation.").

9

Thus, it is appropriate for Cyandia to present SAP's revenues and profits within Mr. Blok's *Georgia-Pacific* analysis and to rebut SAP's damages positions, and SAP has not shown that it would suffer any prejudice if such information was admitted.

## IV.    CYANDIA'S OPPOSITION TO SAP'S MOTION *IN LIMINE* NO. 4

SAP mischaracterizes Cyandia's damages case. Cyandia will present its damages theory through the expert testimony of Mr. Blok, who provides a detailed reasonable royalty analysis. *See generally* Ex. 24 (Blok Rpt.). During fact discovery, Cyandia also detailed facts upon which Cyandia may calculate a reasonable royalty in response to SAP's Interrogatory No. 7 seeking Cyandia's damages contentions. Ex. 25 (Cyandia's May 13, 2025 Resp. to SAP's Interrogatory No. 7) at 15-23. Cyandia does not intend to have any lay opinion testimony from its CEO, Mr. Wetzer, or any other fact witness regarding the valuation of the Asserted Patents or "the amount of damages that should be awarded in this case." Mot. at 11. Rather, Mr. Wetzer's testimony has been limited to factual background concerning Cyandia's past interactions with SAP, including whether the offer to work with Cyandia and to own its patents are reflective of what Cyandia would have licensed the Asserted Patents for at that time, and whether Cyandia had ever obtained a third-party valuation of the Asserted Patents. That testimony provides historical context, not expert opinion on damages.

At deposition, Mr. Wetzer testified about the circumstances surrounding his offer to sell the Asserted Patents to SAP and whether Cyandia had ever obtained a third-party valuation of the patents. Ex. 26 (Wetzer 04/23/25 Dep. Tr.) at 241:5-11, 243:11-244:1. He explained that he offered to sell the patents as part of a business partnership working with SAP, and that Cyandia never obtained a third-party valuation of the patents. *Id*. SAP never asked him "what he should or would have offered" to license the Asserted Patents to SAP. Mot. at 12.

What Mr. Wetzer will testify to is that around the time of the hypothetical negotiation, Cyandia decided to shift its focus to its intellectual property and he tried to find large companies to partner with to develop its valuable technology. Ex. 26 (Wetzer 04/23/25 Dep. Tr.) at 105:13-107:23. The offer to SAP was about a working business partnership, where Cyandia had an opportunity to grow and expand its business with SAP, and was not a license to the Asserted Patents, which would have involved very different considerations. Unless SAP opens the door, Mr. Wetzer is not going to give a dollar value of a license with SAP or the value of an SAP business partnership with Cyandia at trial. In other words, if SAP seeks to suggest that the offer to sell the patents which was a component of a business partnership proposal is indicative of what a license would be valued for, then Mr. Wetzer, who was the primary decision maker at the time, "can validly and with personal knowledge offer testimony about [what his] state of mind was at the time and what [he] think[s] [he] would have done" due to his "extensive personal knowledge of [the company's] operations, technological development, and business strategy." *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, No. CV 09-290, 2013 WL 1767970, at \*2 (W.D. Pa. Apr. 24, 2013) (denying motion to strike testimony of CEO and VP where they can provide company position on "what would have occurred under certain circumstances" if it is "based on personal knowledge"). While Mr. Wetzer is not offering an opinion, such a lay opinion is permissible. Indeed, Mr. Wetzer need not be qualified as an expert to provide such testimony because his testimony is based on his own perception and not on "scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Indeed, the advisory note to Rule 701 confirms that such testimony is permissible, stating that:

> [An] owner or officer of a business can testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert. . . . Such opinion testimony is admitted not because of experience, training or specialized knowledge

11

within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business.

Fed. R. Evid. 701, Advisory Committee's Note (2000 Amendment) (citing *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1169 (3d Cir. 1993)); *see also Seitz v. Envirotech Sys. Worldwide Inc.*, No. CV H-02-4782, 2008 WL 656513, at *5 (S.D. Tex. Mar. 6, 2008) (finding plaintiff CEO "may provide a lay opinion" on certain damages issues because a "'layman can under certain circumstances express an opinion even on matters appropriate for expert testimony.'") (quoting *Miss. Chem. Corp. v. Dresser-Rand Co.*, 287 F.3d 359, 373 (5th Cir. 2002)).

SAP's reliance on *AVM Technologies* and *ABS Global* are inapposite. Mot. at 12. In *AVM Technologies*, plaintiff sought to admit testimony of the inventor regarding "an analysis of the estimated costs that '[***defendant***] necessarily would have incurred to avoid the [patent,]" "the calculation of a 'per design technology use' fee that [***defendant***] would pay[,]" "a multiplication factor to apply to the per design technology use fee[,]" "and a final damages number based on the application of the adjusted and discounted per design technology use fee to the number of product designs." *AVM Techs., LLC v. Intel Corp.*, 927 F. Supp. 2d 139, 146 (D. Del. 2013) (emphasis added). The court found that such opinions were "the province of expert analysis" and that the plaintiff inventor of the patents could not testify regarding what the ***defendant*** would have paid because he is an outsider and what the defendant would have done is outside his personal knowledge. *Id.* Here, Mr. Wetzer is not testifying as to what SAP would have done, but only regarding what the offer to sell the Asserted Patents actually involved, and that would not have been what Cyandia would have been willing to accept from SAP ***to license*** the Asserted Patents at the time of the hypothetical negotiation based on his personal knowledge if SAP opens the door to such issues.

12

In *ABS Global*, the court precluded the CEO's testimony because plaintiff's interrogatory response regarding a valuation of the patents was untimely and "disclosed no more than that it would be relying on [the CEO's] deposition testimony, during which [the CEO] refused to testify about the value of the [] patents." *ABS Glob., Inc. v. Inguran, LLC*, No. 14-cv-503-WMC, 2019 WL 3984373, at *3 (W.D. Wis. Aug. 23, 2019). Here, Cyandia timely responded to SAP's Interrogatory No. 25, provided an estimate of ██████████ and Mr. Wetzer fully responded to SAP's deposition questions.

The Court should deny SAP's MIL No. 4 because, as the CEO of Cyandia at the relevant timeframe and inventor of the Asserted Patents, Mr. Wetzer should be permitted to testify as to what Cyandia was doing during the hypothetical negotiation, as such facts are within his personal knowledge and to rebut SAP to the extent it suggests that damages are close to what Cyandia offered as a business proposal to SAP.

## V.    CYANDIA'S OPPOSITION TO SAP'S MOTION *IN LIMINE* NO. 5

SAP's MIL No. 5 seeks to prevent Cyandia from presenting evidence related to willfulness, as Mr. Wetzer's testimony regarding his 2015-2016 discussions with SAP necessarily involves his observation that Cyandia's Experience Delivery Platform was similar to the accused SAP Fiori offering. Ex. 26 (Wetzer 4/23/25 Dep. Tr.) at 212:13-25 ("I just saw [SAP's] Fiori product. It appears to have similarities to things that I was doing for which we have some IP protection. We should probably talk about this stuff."). Because of the similarity and potential for Cyandia's technology to complement SAP's offerings, he contacted SAP about working together and supplied SAP with a detailed presentation deck regarding its technology and a draft patent-purchase term sheet, both listing the Asserted Patents. Ex. 27 (materials sent to SAP) at SAP_CYAN_00194968-91. Mr. Wetzer's explanation of the similarities he observed

13

████████████████████████████████████████

between Cyandia's product and SAP's accused Fiori technology provides the context for why Cyandia approached SAP. Such testimony is permissible because it does not relate to infringement. *See United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*, No. 2:18-cv-00366-JRG-RSP, 2019 WL 6896674, at *4 (E.D. Tex. Dec. 18, 2019) (comparisons between the accused product to patentee's embodiments "is appropriate and relevant to issues . . . beyond the issue of infringement").

Specifically, Mr. Wetzer will testify about how the visual similarities between Cyandia's technology and SAP's Accused Products motivated him to contact SAP. Ex. 26 (Wetzer 4/23/25 Dep. Tr.) 212:13-25, 235:10-236:7 (████████████████████████████████), 257:16-258:5 (████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████), 261:9-19 (████████████████████████████████████████████ ██████████████████████████████████████████████ ███████████████████████████████).

Finally, the cases SAP cited are inapposite. In *Zenith Labs, Inc.*, and *Image Processing Techs., LLC*, the comparison between the accused product and embodiments of the asserted patents was prohibited for proving infringement, as opposed to willfulness. *Zenith Labs., Inc. v. Bristol-Myers Squibb Co.*, 19 F.3d 1418, 1423 (Fed. Cir. 1994); Ex. 28 at 7, *Image Processing Techs., LLC v. Samsung Elecs. Co.*, No. 2:20-cv-00050-JRG-RSP, Dkt. No. 88 (E.D. Tex. Apr. 15, 2020) (providing plaintiff's motion *in limine* No. 9 as filed, where plaintiff solely focused on patent infringement analysis, and not willfulness); Dkt. No. 185-19 at 4, *Image Processing*

14

█████████████████████████████████████

*Techs., LLC v. Samsung Elecs. Co.*, No. 2:20-cv-00050-JRG-RSP, Dkt. No. 171 (E.D. Tex. June 8, 2020) (granting plaintiff's motion *in limine* 9 in full, including its legal reasoning).

Therefore, for the foregoing reasons, the Court should deny SAP's MIL No. 5.

Respectfully submitted,

Dated: August 25, 2025              By: */s/ Paul J. Andre*

Paul J. Andre (*pro hac vice*)
Lisa Kobialka (*pro hac vice*)
James Hannah (*pro hac vice*)
Kristopher Kastens (*pro hac vice*)
Christina M. Finn
Melissa T.G. Brenner (*pro hac vice*)
Charles J. Keller (*pro hac vice*)
HERBERT SMITH FREEHILLS
KRAMER (US) LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
Telephone: (650) 752-1700
paul.andre@hsfkramer.com
lisa.kobialka@hsfkramer.com
james.hannah@hsfkramer.com
kris.kastens@hsfkramer.com
christina.finn@hsfkramer.com
missy.brenner@hsfkramer.com
charles.keller@hsfkramer.com

S. Calvin Capshaw (Bar No. 03783900)
Elizabeth L. DeRieux (Bar No. 05770585)
Capshaw DeRieux LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: (903) 845-5770
ccapshaw@capshawlaw.com
ederieux@capshawlaw.com

*Attorneys for Plaintiff*
Cyandia, Inc.

15

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2025, the foregoing document was served on all counsel of record via electronic mail.

/s/ Paul J. Andre
Paul J. Andre

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document is being filed under seal pursuant to the Protective Order entered in this matter.

/s/ Paul J. Andre
Paul J. Andre

16